RILEY *against* THE STATE:

#### IN ERROR.

Where a person convicted of an offence, is sentenced to imprisonment for a certain term of time, *and until he shall pay the costs*, the payment of the costs is a part of the punishment; and until such payment is made, the continued imprisonment after the expiration of the term, is of the same character as that before.

Where an imprisoned convict, by the permission and direction of the gaoler, went about the land connected with the gaol; went also to market, and brought back provisions for the gaol and its inmates; cooked food for the prisoners in the kitchen of the dwelling-house attached to the gaol; went to the adjacent barn, and there fed and milked the cow; and thence, without the knowledge of the gaoler, he departed, leaving the state; it was held, that the conduct of the gaoler did not justify or excuse the departure of the prisoner, which amounted to a criminal escape. [One judge dissenting.]

Though an intent to escape is necessary to constitute the offence of escape; yet where the case, after a trial and conviction, was brought up, on a bill of exceptions, in which the circumstances of the departure were detailed, but no question as to intent appeared to have been made on the trial; it was held, that such question did not arise on the record in the court above.

A bill of exceptions bringing up the whole case, is not allowable.

THIS was an information, filed in the county court, against *Rufus Riley,* charging, that he, on the 8th day of *September,* 1841, escaped from the gaol in *Norwich.*

The prisoner had been convicted, at the *June* term of the

county court in 1841, of a breach of the peace, and been sentenced to be imprisoned sixty days in the gaol at *Norwich*, and pay the costs, taxed at 62 dollars, 34 cents. In pursuance of this judgment, he was imprisoned in *Norwich* gaol, on the 12th of *June*, 1842.

There is on the premises owned by the county of *New-London* at *Norwich*, on which the gaol is situated, a dwelling-house, wherein the keeper of the gaol resides. The premises are surrounded by a picket fence, not adapted nor intended to prevent the escape of prisoners. The prisoner, by direction of the gaoler, during and after said term of sixty days, went about the premises owned by the county, and off from said premises into the town of *Norwich*, with a keeper, for the purpose of bringing provisions to the gaol for the use of its inmates.

On the 8th of *September*, 1842, after said term of sixty days had expired, but before the costs had been paid, the prisoner was employed, by and under the direction of the gaoler, in the kitchen of the gaoler's dwelling-house, for purposes connected with the gaol, and in cooking for the prisoners. The gaoler then left the immediate charge of the prisoner, and saw him no more at that time. The prisoner, as he had been accustomed to do, and by the direction of the gaoler, then, unaccompanied by any person, went out to a barn on the premises, to milk and feed the cow ; and thence, without the knowledge of the gaoler, escaped from the premises, and did not return, but left the state, and continued absent until the 1st of *May*, 1843, when he was again arrested.

Upon these facts the court charged the jury, that the prisoner was guilty ; and the jury accordingly found him guilty.

The prisoner thereupon filed a bill of exceptions, and brought a writ of error in the superior court ; which was reserved for the consideration and advice of this court.

*Strong* and *L. Bristol*, for the plaintiff in error, contended, 1. That the costs, though a part of the judgment, constituted no part of the punishment. The prisoner was *indebted* for that amount ; and the gaoler had a right to detain him until the debt was paid ; but after he had suffered the penalty of the law, his departure was not the subject of a criminal prosecution.

*New-London,*
July, 1843.

Riley
*v.*
The State.

2. That if the costs were a part of the punishment, still the departure of the prisoner, under the circumstances of this case, was not an *escape*. It should be kept in mind, that he is not charged with *breaking* the prison; nor with escaping by *collusion* with or the *connivance* of the gaoler; but simply, with *escaping* from the *prison*. Now, in the first place, what is the *prison?* Is it all the county property? Is it a cow-yard belonging to the prison? When the prisoner went off, he went neither from the four walls of the prison, nor from any other place in which his liberty was restrained. He was no where *in arcta et salva custodia*. Secondly, the departure in this case was not *with intent* to escape; which is essential to constitute the offence. If the prison be set on fire by accident, or by others, and the prisoner depart *to save his life*, it is not an escape. 1 *Hale's P. C.* 611. Here, it was not left to the jury to enquire with what intent he went away; but they were directed unqualifiedly, upon the admitted facts, to find him guilty. This was evidently wrong, unless the monstrous proposition can be supported, that every departure, without any intent to escape, constitutes an indictable offence.

*Wait*, contra, contended, 1. That the payment of costs constitutes part of the punishment, as much as payment of a fine or the duration of the imprisonment. It is not a debt due the county. If it was, the prisoner, under the former law, could have sworn out; and under the present law, perhaps he could not even be committed.

2. That an escape from prison, by a person lawfully imprisoned, is an offence at common law. 1 *Russ. on Crimes,* 529. 2 *Sw. Dig.* 325–7. 4 *Bla. Com.* 129. *Rosc. Crim. Ev.* 355. 2 *Chitt. Crim. Law,* 159. *in notis.* 7 *Conn. R.* 385, 6, 7.

3. That neither the negligence, nor even the consent of the keeper, will justify a prisoner in departing from prison. If he departs, though the doors of his cell are wide open, he commits an offence at common law. 7 *Conn. R.* 385. *Rosc. Crim. Ev.* 354.

4. That when a prisoner is set at work within the prison limits—*i. e.* on county land connected with and appertaining to the gaol building—under the direction of the keeper, he is, in contemplation of law, *in prison*. Suppose the prisoners

cut stone in a yard attached to the gaol, and one of them runs away; does he not escape from prison? Females and aged or infirm men are confined in the county house, connected with the gaol, but not in the gaol itself; would not an escape from their rooms be an escape from prison? At the state prison, some of the prisoners work on land outside of the prison walls; but was it ever doubted that an escape of such prisoners, when thus employed, would be an escape from the prison? Debtors leaving the prison limits are considered in law as escaping from prison, and the sheriff is sued for their escape from prison.

Waite, J. The first question submitted to our consideration in this case, is, whether the confinement of the prisoner for the non-payment of the costs, after the expiration of the sixty days, during which he was sentenced to be imprisoned, was a part of his punishment, or a mere imprisonment for debt.

The statute provides, that "every person who shall be prosecuted for any crime or matter of delinquency, and shall be thereof duly convicted, shall pay all the necessary costs arising in such prosecution, before he shall be discharged." *Stat. de Crimes, sect.* 149. The next section of the statute authorizes the attorney for the state, by and with the advice of the superior or county court, at his discretion, to discharge from imprisonment any person, holden in a common gaol, only for payment of fine and costs, who has no property or means of satisfying the same, taking his note therefor, or security, if obtainable.

The payment of the costs, must be considered as a part of the punishment; and he cannot be liberated from imprisonment until they are paid, provided he has the means of discharging them. And even if he is without those means, he must remain in gaol, unless the attorney, with the advice of the court, will consent to take his note.

We perceive no difference, in contemplation of law, between an escape before or after the expiration of the sixty days, so long as the costs remain unpaid. In this respect, his imprisonment was very different from what it would have been, had he been committed upon an execution issued upon a judgment in a civil cause.

The next enquiry is, whether the prisoner's leaving the gaol, in the manner and under the circumstances detailed in the bill of exceptions, amounts to an escape—an offence punishable by law.

*New-London,*
July, 1843.

Riley
*v.*
The State.

It was long ago decided, by the court of *King's Bench* in *England*, " that although a prisoner departs from prison, with the keeper's license, yet it is an offence, as well punishable in the prisoner as in the keeper." *Hobert* and *Stroud's* case, *Cro. Car.* 209. That doctrine has never since been overruled, but often recognized as law. *State* v. *Doud,* 7 *Conn. R.* 384. Hence, if the doors of a prison are left open, by the negligence or consent of the gaoler, and the prisoner depart from prison, he is guilty of a misdemeanour. So if the prison be broken by others, without his procurement or consent, and he escape through the breach so made, he may be indicted for the escape. 1 *Russ. on Crimes,* 367. It is said, that however strong may be the natural desire of liberty, yet it is the duty of every man to submit himself to the restraints imposed by law.

Applying these principles to the case under consideration, does the conduct of the gaoler in employing the prisoner to bring provisions to the gaol—cook them for the other prisoners—and to milk and feed the cow, furnish a legal excuse for the prisoner's leaving the gaol, without the knowledge of the gaoler, and departing from the state?

In the opinion of a majority of the court, such excuse is not furnished, by the conduct of the gaoler. The question is not, as to the degree of punishment which ought to be inflicted upon a person leaving under such circumstances; but whether a sufficient justification or excuse is made out for the acknowledged departure from the prison. We think the prisoner cannot shield himself under the misconduct of the gaoler. The law has not clothed the latter with the pardoning power.

But it is said, that it does not appear, that the prisoner left with *an intent* to escape. No doubt the intent is necessary to constitute the offence. But we do not think that question fairly arises upon the record. No such question appears to have been made on the trial. Had it been, it was a proper subject for the determination of the jury.

The fair inference to be drawn from the case, as stated, is, that the parties meant to present the question whether an in-

tentional departure from gaol, in the manner and under the circumstances detailed in the motion, amounts to an escape in contemplation of law.

Besides, the case comes before us in violation of a rule often repeated, that a bill of exceptions bringing up the whole case, is not admissible. It was permitted to be argued before us, by an agreement of the counsel, upon an abstract from the record. The irregularity in the proceeding was, in consequence, not noticed until after our decision was announced. We have accordingly assigned the reasons for our decision.

But even if the county court had erred in its proceedings, we do not think the case is presented to us in a form that would justify a reversal.

The majority of the court are of opinion, that the judgment of the county court ought not to be reversed.

In this opinion WILLIAMS, Ch. J. and STORRS and HINMAN, Js., concurred.

CHURCH, J. I have not been convinced, by the argument in this case, that this prisoner has been guilty of any offence punishable by law. And I am not solicitous to search for obsolete doctrines, by which he can be made to suffer a penalty more properly incurred by the gaoler.

The motion in this case, as it seems to me, does not state any facts which constitute any offence, known either to the statute or the common law. It does not appear, that the prisoner left the gaol, by any prison-breach; nor by any art or device of his own; nor by collusion or conspiracy with the gaoler. He was in the custody of the keeper of the prison, subject to his controul and directions, at least as he supposed. By order of the gaoler, the prisoner left the gaol and the prison-yard, and was put to labour at a distance, in the barn-yard, beyond the prison limits. He did not resist the gaoler in this, and he was not bound to. It is too much to require of a prisoner, that he should resist enlargement, when it is offered to him, by his lawful keeper, without any device or procurement of his own. After the prisoner left the prison limits, he was entirely at large: he had escaped then, if he ever escaped. In order to constitute an escape, as well

as other crime, a criminal intent is indispensable. The facts *New-London,* July, 1843.

Riley
*v.*
The State.
in this case conclusively negative a criminal intent. If they do not, they certainly afford no presumption of such intent. The prisoner went to the barn-yard to milk the cows, by *direction* of the gaoler. The prisoner, at least on his trial, was entitled to the opinion of the jury as to the intent with which he left the prison. But this question of intent was not submitted to the jury ; but the judge, as matter of law, decided, that the facts set forth constituted guilt. I am sure this was wrong.

It seems, the prisoner had often before left the prison, and by direction of the gaoler, had frequently gone into the streets of the city of *Norwich.* I cannot believe that he was guilty of an escape at these times ; nor even that the prosecutor would claim this to be the law : it is repugnant to all our notions of guilt or crime. Well, but he left the prison, in this instance, in the same way ; how was this any more a crime ? But he did not return. This fact might have been proper evidence from which the jury might infer that he left the gaol with a criminal intent to escape. But his neglect to return did not constitute an escape, as a matter of law. I have remarked before, that if this prisoner was guilty of an escape at all, it was *eo instanti* that he passed the prison limits ; and this would depend upon his intention then, of which the jury were the sole constitutional judges. The real offence of this man was only that he escaped from the barn-yard, or that he neglected to return to the gaol after he was, by his keeper, permitted, and even directed, to depart. But whatever else these offences may be, they were not escapes from prison, nor the violation of any other municipal law with which I am acquainted.

In principle, this is not unlike the very frequent cases of personal property procured by pretended bailment, and subsequently converted, by the bailee, to his own use ; in which the question always is, whether the possession was originally obtained *animo furandi,* or whether the felonious intent was conceived afterwards ; in which latter case, the act of taking is not larceny. And in all such cases, the question of criminal intent is for the jury.

Judgment affirmed.