[Crim. No. 20047. Second Dist., Div. Five. Mar. 24, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL PEREZ, Defendant and Appellant.

**COUNSEL**

Albert A. Glazer, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Geoffrey S. Cantrell, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**AISO, J.**—A jury found defendant Manuel Perez guilty of a violation of Penal Code section 4530, subdivision (c), (escape—failure to return upon expiration of temporary release). His motion for a new trial was denied. He was sentenced to state prison with sentence to be served concurrently with any prior uncompleted sentence. His notices of appeal from the judgment, sentence, and denial of the new trial motion are construed as an appeal from the judgment of conviction. (Pen. Code, § 1237, subd. 1; *People* v. *Spencer* (1969) 71 Cal.2d 933, 934-935, fn. 1 [80 Cal.Rptr. 99, 458 P.2d 43]; *People* v. *Garcia* (1967) 67 Cal.2d 830, 832, fn. 1 [64 Cal.Rptr. 110, 434 P.2d 366].)

Following his conviction in a municipal court for a violation of Health and Safety Code section 11721, defendant was committed as a narcotic addict in 1967 by the Superior Court of Los Angeles County (Welf. & Inst. Code, § 3050). After several unsuccessful releases on outpatient status, he was received at the California Men's Colony-East (the Colony) in 1970. (See *In re Cruz* (1965) 62 Cal.2d 307, 313-315 [42 Cal.Rptr. 220, 398 P.2d 412].)

He was "granted a 72 hour temporary release for the purpose of: seeking employment, interview with Field Agent and visit with family" commencing November 25, 1970, around 2 p.m. The temporary release authorization form (the form) indicates that the temporary release was granted pursuant to the authority of Welfare and Institutions Code section 3306. A condition specified on the form reads: "If subject does not return as designated, escape procedures will be initiated." Below the conditions and immediately above defendant's signature appear the printed words: "Above conditions accepted." The form was signed by defendant on November 18, 1970, and was approved by the custodial authorities on November 20, 1970. (Exhibit "C.") Prior to his execution of the form, defendant was also orally advised that if he did not return within the "stipulated time," escape procedures would be initiated against him. According to the testimony of a records officer from the Colony, the records of the Colony did not reflect a release date within 90 days of the date he was allowed to go on pass. Neither did they indicate the grant of any permanent release or parole,

which would have been recorded if such a release or parole had been granted. (The form shows that "scheduled parole date" was "tentative.")

Defendant did not return to the Colony after the expiration of the 72 hours at approximately 2 p.m. on November 28, 1970.

On February 10, 1971, defendant was stopped and questioned concerning his suspicion-evoking behavior in an area in Los Angeles which had a high frequency of burglaries. In course of the search of defendant for weapons, the officer noticed three puncture marks on defendant's arm. A radio check disclosed a warrant for a moving traffic violation outstanding against a person with a name corresponding to that given by defendant as his. Defendant then was taken to the station for further check of identity. This check developed that defendant had given a false name and that a felony warrant for an escape from the Colony was outstanding against him. He was returned to the Colony and this prosecution followed.

The original information charged defendant with an escape in violation of Penal Code section 4530, subdivision (b); the amended information on which he proceeded to trial charged him with a violation of subdivision (c) of that section. No demurrer was filed to the amended information, nor was a motion in arrest of judgment made. His motion to dismiss on the ground that the temporary release did not comply with the requirements of Welfare and Institutions Code section 3306, which was indicated on the form as the legal authorization for the furlough, was denied. In his handwritten *pro se* declaration in support of his motion for a new trial, defendant states that his promise on the form related to Welfare and Institutions Code section 3002.

The provisions of these and other statutes insofar as they are relevant to this appeal are set forth in the margin below.[1] All of these statutes were in

---

[1] Penal Code section 4530: "(a) Every prisoner confined in a state prison who, by force or violence, escapes or attempts to escape therefrom . . . or any . . . other place while under the custody of prison officials, officers or employees . . . is punishable by imprisonment in a state prison for a term of not less than one year. The second term of imprisonment of a person convicted under this subdivision shall commence from the time he would otherwise have been discharged from said prison. . . .

"(b) Every prisoner who commits an escape or attempts an escape as described in subdivision (a), without force or violence, is punishable by imprisonment in the state prison for a term of not less than six months nor more than five years. . . .

"(c) The willful failure of a prisoner who . . . is temporarily released pursuant to the provisions of Sections 2690 . . . of this code, or Section 3306 of the Welfare and Institutions Code, to return to the place of confinement not later than the expiration of a period during which he is authorized to be away from such place of confinement, is an escapee [*sic*] from such place of confinement punishable as provided in this section. . . ."

Penal Code section 4504 provided in part: "For purposes of this chapter: (a) A

effect when defendant signed the form on November 18, 1970, with the exception of Penal Code section 4530, subdivision (c), and the amendment to Penal Code section 2690, which did not become effective until November 23, 1970.

 Defendant first contends that because Penal Code section 4530, subdivision (c), was not in force on November 18, 1970, when he signed the form, his conviction constitutes a violation of the state and federal constitutional prohibitions against ex post facto laws. We do not agree.

person is deemed confined in a 'state prison' if he is confined in any of the prisons and *institutions* specified in Section 5003 by order made pursuant to law, including, but not limited to, commitments to the Department of Corrections . . . , regardless of the purpose of such confinement and regardless of the validity of the order directing such confinement, until a judgment of a competent court setting aside such order becomes final.

"(b) A person is deemed 'confined in' a prison although, at the time of the offense, he is temporarily outside *its walls or bounds for* . . . any . . . *purpose for which* a prisoner may be allowed temporarily outside the walls or bounds of the prison. . . ." (Italics added.)

Penal Code section 5003: "The department has jurisdiction over the following prisons and *institutions*: . . . (h) The California Men's Colony. . . . (j) The California Rehabilitation Center. . . ." (Italics added.)

Welfare and Institutions Code section 3002 provided in part: "Every person committed pursuant to this chapter or former Chapter 11 (commencing with Section 6399) of Title 7 of the Penal Code who escapes or attempts to escape from lawful custody is guilty of a crime punishable by imprisonment in the state prison for not exceeding seven years. . . ."

Welfare and Institutions Code section 3305 provided: "The supervision, management and control of the California Rehabilitation Center and the responsibility for the care, custody, training, discipline, employment and treatment of the persons confined therein are vested in the Director of Corrections. The provisions of Part 3 of the Penal Code [of which all the Penal Code sections set forth above are a part] apply to said institution as a prison under the jurisdiction of the Department of Corrections and to the persons confined therein insofar as such provisions may be applicable."

Welfare and Institutions Code section 3306 in the part which might have any relevance to this case provided: "Under specific regulations established by the director for the selection of confined persons, the director may also authorize temporary removal or temporary release of any confined persons for the purpose of furnishing to the confined persons medical treatment not available at the prison or institution for purposes preparatory to a return to the community within 90 days of his release date, or for participation in conservation camp programs."

Penal Code section 2690 had a similarly worded paragraph: "Under specific regulations established by the director for the selection of inmates, the director may also authorize *temporary removal or temporary release of any inmate for the purpose of furnishing to the inmate medical treatment* not available at the prison or institution for purposes preparatory to a return to the community within 90 days of his release date and for disaster aid, including local mutual aid and state emergencies. . . ." Statutes of 1970, chapter 830, section 1, which came into force November 23, 1970, deleted the words "and for" preceding "disaster aid" and inserted in lieu thereof "or for purposes of," and inserted a comma before the words "for purposes preparatory to a return to the community" etc.

An ex post facto law is " 'one which, in its operation, makes that criminal or penal which was not so at the time the action was performed; or which increases the punishment; or, in short, which, in relation to the offense or its consequences, alters the situation of a party to his disadvantage.' " (*Thompson* v. *Missouri* (1898) 171 U.S. 380, 383 [43 L.Ed. 204, 206, 18 S.Ct. 922, 923]; see also 3 Witkin, Summary of Cal. Law (7th ed. 1960) Constitutional Law, § 95, p. 1894, and cases cited.)

The signing of the form was not an operative act upon which the corpus delicti of the crime charged in this case must rest. In crimes laid under such statutes as, Penal Code section 1319.4 or Vehicle Code section 40508, subdivision (a), where the gravamen of the offense is the failure to appear after signing a written promise to appear,-the execution of the written promise is an essential element of the offense; but not so in an escape. The only function which the signed form played in this case was that of evidentiary proof that the failure to return to the Colony was willful. The escape was subject to prosecution with or without the signed form. It did not occur until November 28, 1970, when Penal Code section 4530, subdivision (c), had been in force some five days. Hence, there was no violation of the constitutional prohibitions against ex post facto laws.

The foregoing discussion also answers defendant's contention that, since under the law of contracts only those statutes in force at the time of entering into a contract are read into the agreement, he may not be prosecuted under a statute not in force when he signed the form. There is no attempt in this case to enforce an agreement.

Although not raised by defendant upon this appeal, there remains to be considered the question whether Penal Code section 4530, subdivision (c), or Welfare and Institutions Code section 3002 should control in this case. As one committed under Welfare and Institutions Code section 3050, defendant falls within the purview of section 3002. However, defendant, as one confined to the Colony considered as an institution, was also subject to the provisions of Penal Code section 4530, subdivision (c), read together with Penal Code sections 4530, subdivision (a), and 4504 and with Welfare and Institutions Code section 3305. Both statutory provisions apply to civilly committed narcotic addicts, but Penal Code section 4530, subdivision (c), applies only to committed addicts in a specific situation, whereas Welfare and Institutions Code section 3002 applies generally to all such persons committed under chapter 1, division 3, of the Welfare and Institutions Code. It is also both later in time and the statute directly applicable to the place of confinement. Consequently, Penal Code section 4530, subdivision (c), controls as to persons temporarily released from the Colony pursuant to Welfare and Institutions Code section 3306. (See *People* v. *Temple* (1962) 203 Cal.App.2d 654, 656-658 [21 Cal.Rptr. 633].)

■ Defendant points to the "xx" mark on the form as indicating that the legal authorization for his three-day furlough was Welfare and Institutions Code section 3306, but that there was no showing made that he was within 90 days of a release date. From this he argues that his temporary release was invalid and that therefore his failure to return was not unlawful. His contention not only strikes us as being overly technical (cf. *People v. Armstrong* (1960) 188 Cal.App.2d 745, 748 [10 Cal.Rptr. 618]), but we fail to follow the logic of it. Even if there had been no defect in the temporary release, defendant would have been deemed "confined in" the Colony. (Pen. Code, § 4504, subd. (b).) Much less would an invalid permit, to be physically outside of the facility, terminate constructive custody, which may be the basis of an escape *(People v. Owens* (1965) 236 Cal. App.2d 403, 404 [46 Cal.Rptr. 91]; *People v. Haskins* (1960) 177 Cal. App.2d 84, 86-87 [2 Cal.Rptr. 34]). The shortcoming asserted by defendant did not convert the temporary release into an unconditional release or a parole. The operative period of the temporary release authorization, valid or invalid, came to an end upon the expiration of the 72 hours; the legal invalidity of the purported authority or license by which he left the physical confines of the Colony could in no way have any bearing upon defendant's failure to return after that time. (Cf. *State v. McInerney* (1933) 53 R.I. 203, 205 [165 A. 433, 434].) We are not concerned here with the legal effect of the temporary release authorization as a defense against an accusation of an escape during the 72-hour period.

Our holding that the invalidity of the temporary release does not constitute a justification for defendant's escape finds support in the common law. At common law, the fact that a prisoner left his place of confinement pursuant to a license or an agreement of his custodian, which the custodian was not authorized to grant or enter into, made the prisoner no less guilty of an escape. *(Riley v. State* (1843) 16 Conn. 47, 50-51; *State of Nevada v. Davis* (1880) 14 Nev. 439, 445 (dictum); see also *Ex Parte Oliver* (1915) 11 Okla. Crim. 536, 540-541 [149 P. 117, 119] [in accord under Oklahoma Constitution and statutes].)

The judgment of conviction is affirmed.

Kaus, P. J., and Stephens, J., concurred.