STATE of Iowa, Appellee,

v.

Larry D. GOWINS, Appellant.

No. 55840.

Supreme Court of Iowa.

Oct. 17, 1973.

Robert D. Taha, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen. and Ray Fenton, Co. Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ.

RAWLINGS, Justice.

Appeal by defendant from judgment on jury verdict finding him guilty of willful escape, The Code 1971, Section 247A.6. We affirm.

Defendant, Larry D. Gowins (Gowins), was first charged with escape in violation of Code § 745.1, which provides:

"If any person committed to the penitentiary or to the men's or women's reformatory shall break such prison and escape therefrom or shall escape from or leave without due authority any building, camp, farm, garden, city, town, road, street, or any place whatsoever in which he is placed or to which he is directed to go or in which he is allowed to be by the warden or any officer or employee of the prison whether inside or outside of the prison walls, he shall be deemed guilty of an escape from said penitentiary or reformatory and shall be punished by imprisonment in said penitentiary or reformatory for a term not to exceed five years, to commence from and after the expiration of the term of his previous sentence."

July 10, 1972, trial thereon commenced in Polk District Court. A jury was duly empaneled, witnesses testified on behalf of the prosecution and the State rested. Defendant promptly moved for a dismissal. That motion was overruled. Subsequently defendant rested, then renewed his dismissal motion. Trial court, upon reconsideration, ordered the case dismissed and in so doing noted the cause was "filed under the wrong section."

Thereafter a county attorney's information was filed charging defendant willfully failed to return to the Half-Way House, Des Moines, in violation of Code § 247A.6, which states:

"Any inmate relased from actual confinement under a work release plan who willfully fails to return to the designated place of confinement at the time specified in the plan shall be guilty of a felony and upon conviction be subject to the penalty provided in section 745.1."

To that accusation Gowins ultimately entered a "plea of former jeopardy". In support thereof he contended, (1) the offense last charged arose out of the same facts upon which the first cause was predicated, and (2) the prior case was dismissed at conclusion of all evidence after both the State and defendant had rested. Gowins' attendant motion to dismiss was overruled. Trial, guilty verdict and judgment followed upon the § 247A.6 offense charged.

In support of a reversal defendant contends overruling of the aforesaid former jeopardy based motion to dismiss violates his rights under the U.S. Const., amend. V.

I. All doubts regarding applicability to state court prosecutions of the Fifth Amendment protection from double jeopardy were effectively put to rest in Benton v. Maryland, 395 U.S. 784, 794–795, 89 S. Ct. 2056, 2062–2063, 23 L.Ed.2d 707 (1969).

II. By way of exclusion we turn now to Ashe v. Swenson, 397 U.S. 436, 445–446, 90 S.Ct. 1189, 1195–1196, 25 L.Ed.2d 469 (1970), where the court held collateral estoppel is part of the Fifth Amendment's

guarantee against double jeopardy. There the majority concluded an armed robbery defendant, after having been acquitted by jury verdict of robbing one victim in a single, multi-victim poker game should not have been tried for the robbery of another player victim. In brief the court determined, by acquittal on the first charge the jury had dispositively found defendant was not one of the robbers. See also 51 A.L. R.3d 693.

It is at once apparent the collateral estoppel doctrine is not instantly applicable.

■ III. On the other hand it must be inceptionally conceded Gowins was, in the constitutional sense, placed in jeopardy as a result of the first trial proceedings even though no jury verdict was returned. See State of Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 1069–1071, 35 L.Ed.2d 425 (1973); Smith v. State of Mississippi, 478 F.2d 88, 93 (5th Cir. 1973); United States v. Armco Steel Corporation, 252 F. Supp. 364, 370 (S.D.Cal.1966); Maes v. District Court, City & County of Denver, 503 P.2d 621, 623 (Colo.1972); Black's Law Dictionary, "Jeopardy", page 969 (rev. 4th ed. 1968); 21 Am.Jur.2d, Criminal Law, §§ 175–176; 22 C.J.S. Criminal Law §§ 241, 243; 58 Iowa L.Rev. 1000 (1973).

But the foregoing does not alone resolve the double jeopardy question here presented.

■ The constitutional proscription of double jeopardy does not mean that every time an accused is placed on trial he must go free absent a final judgment. See Wade v. Hunter, 336 U.S. 684, 688–689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); State v. Farmer, 48 N.J. 145, 224 A.2d 481, 494–495 (1966).

More recently, in State of Illinois v. Somerville, *supra,* the court dealt squarely with the matter of jeopardy once attached, absent an acquittal or conviction, and the related constitutional guarantee against double jeopardy.

In the cited case a mistrial was directed because the indictment was insufficient to charge a crime. On appeal the court held such a termination of the first proceeding did not bar prosecution of the accused on a subsequent valid indictment. In support of that holding the court informatively stated, 410 U.S. at 461–464, 93 S.Ct. at 1069–1070:

"The fountainhead decision construing the Double Jeopardy Clause in the context of a declaration of a mistrial over a defendant's objection is United States v. Perez, 9 Wheat. (22 U.S.) 579 [6 L.Ed. 165] (1824). Mr. Justice Story, writing for a unanimous Court, set forth the standards for determining whether a retrial, following a declaration of a mistrial over a defendant's objection, constitutes double jeopardy within the meaning of the Fifth Amendment. In holding that the failure of the jury to agree on a verdict of either acquittal or conviction did not bar retrial of the defendant, Mr. Justice Story wrote:

" 'We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution under urgent circumstances, and for very plain and obvious cases; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.' *Id.,* at 580.

"This formulation, consistently adhered to by this Court in subsequent decisions, abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial. The broad discretion reserved to the trial judge in such circumstances has been consistently reiterated in decisions of this Court. In Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949), the Court, in reaffirming this flexible standard, wrote:

" 'We are asked to adopt the *Cornero* [9th Cir., 48 F.2d 69] rule under which petitioner contends the absence of witnesses can never justify discontinuance of the trial. Such a rigid formula is inconsistent with the guiding principles of the *Perez* decision to which we adhere. Those principles command courts in considering whether a trial should be terminated without judgment to take "all circumstances into account" and thereby forbid the mechanical application of an abstract formula. The value of the *Perez* principle thus lies in a capacity for informed application under widely different circumstances, without injury to the defendants or to the public interest.' *Id.*, at 691, 69 S.Ct. at 838.

"Similarly, in Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961), the Court again underscored the breadth of a trial judge's discretion, and the reasons therefor, to declare a mistrial.

" 'Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be obtained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment.' *Id.*, at 368, 81 S.Ct. at 1526.

"In reviewing the propriety of the trial judge's exercise of his discretion, this Court, following the counsel of Mr. Justice Story, has scrutinized the action to determine whether, in the context of that particular trial, the declaration of a mistrial was dictated by 'manifest necessity' or the 'ends of public justice.' The interests of the public in seeing that a criminal prosecution proceed to verdict, either of acquittal or conviction, need not be forsaken by the formulation or application of rigid rules that necessarily preclude the vindication of that interest. This consideration, whether termed the 'ends of public justice,' United States v. Perez, *supra*, at 580 of 22 U.S. or, more precisely, 'the public's interest in fair trials designed to end in just judgments,' Wade v. Hunter, *supra*, at 689 of 336 U.S., at 837 of 69 S.Ct. has not been disregarded by this Court.

"In United States v. Perez, *supra*, and Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892), this Court held that 'manifest necessity' justified the discharge of juries unable to reach verdicts, and therefore the Double Jeopardy Clause did not bar retrial. Cf. Keerl v. Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734 (1909); Dreyer v. Illinois, 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79 (1902). In Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891), a trial judge dismissed the jury, over defendant's objection, because one of the jurors had been acquainted with the defendant, and therefore was probably prejudiced against the Government; this Court held that the trial judge properly exercised his power 'to prevent the defeat of the ends of justice.' In Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894), a mistrial was declared after the trial judge learned that one of the jurors was disqualified, he having been a member of the grand jury that indicted the defendant. Similarly, in Lovato v. New Mexico, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244 (1916), the defendant de-

murred to indictment, his demurrer was overruled and a jury sworn. The district attorney, realizing that the defendant had not pleaded to the indictment after the demurrer had been overruled, moved for the discharge of the jury and arraignment of the defendant for pleading; the jury was discharged, the defendant pleaded not guilty, the same jury was again impaneled, and a verdict of guilty rendered. In both of those cases this Court held that the Double Jeopardy Clause did not bar reprosecution.

"While virtually all of the cases turn on the particular facts and thus escape meaningful categorization, see Gori v. United States, *supra,* Wade v. Hunter, *supra,* it is possible to distill from them a general approach, premised on the 'public justice' policy enunciated in United States v. Perez, to situations such as that presented by this case. A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial. If an error would make reversal on appeal a certainty, it would not serve 'the ends of public justice' to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of that success by an appellate court. This was substantially the situation in both Thompson v. United States, *supra,* and Lovato v. New Mexico, *supra.* While the declaration of a mistrial on the basis of a rule or a defective procedure that lent itself to prosecutorial manipulation would involve an entirely different question, cf. Downum v. United States, *supra,* [372 U.S. 734, 83 S.Ct. 1033, 10 L. Ed.2d 100] such was not the situation in the above cases or in the instant case."

■ IV. In light of the foregoing the question now to be resolved is whether trial court's dismissal of the first charge against Gowins, because brought under the wrong code section, precluded retrial of the accused under a different statutory enactment.

■ Despite Gowins' argument to the contrary it is to us evident the two statutory enactments, quoted above, prescribe separate and distinct offenses.

In so holding we look to the elements which must be established in each instance as a prerequisite to the creation of a jury issue. See State v. Cook, 261 Iowa 1341, 1346–1347, 158 N.W.2d 26 (1968); 21 Am. Jur.2d, Criminal Law, § 182; 22 C.J.S. Criminal Law § 238 at 618.

■ In a prosecution for escape under § 745.1 the State must establish by the requisite degree of proof the accused (1) was convicted; (2) was confined pursuant thereto; (3) escaped from the place of such confinement, or departed without due authority from a place to which he was duly assigned. Significantly, unauthorized departure is the gravamen of the offense and intent is not a factor. See State v. Leckenby, 260 Iowa 973, 976, 151 N.W.2d 567 (1967). See also Hardwick v. United States, 296 F.2d 24, 26 (9th Cir. 1961).

■ On the other hand, elements essential to jury submission of a case under § 247A.6 are, the defendant (1) was convicted; (2) was released from actual resultant confinement under a statutory work release plan; and (3) willfully failed to return to a designated place at the time specified. Distinguishably, willful failure to return is the essence of this offense. Thus intent is a factor. See State v. Orozco, 202 N.W.2d 344, 347 (Iowa 1972).

V. Consequently, the State could not have been permitted to so amend the original information charging a § 745.1 violation as to thereby allege a § 247A.6 offense.

In that regard Code § 773.46 says, in essence, an amendment to an information or indictment cannot be permitted which will have the effect of charging a different offense. See also Code §§ 769.13, 773.36; State v. Hancock, 164 N.W.2d 330, 337 (Iowa 1969).

VI. We are also satisfied trial court's "dismissal" of the original § 745.1 based prosecution because "filed under the wrong section" was, in effect, a mistrial order with a built-in dismissal of the case. See generally Gori v. United States, 367 U.S. at 368, 81 S.Ct. at 1526; Code § 795.-5; State v. Ware, 205 N.W.2d 700, 702 (Iowa 1973); State v. Critelli, 237 Iowa 1271, 1276–1278, 24 N.W.2d 113 (1946); 23A C.J.S. Criminal Law § 1382; Black's Law Dictionary, "Mistrial", page 1153 (rev. 4th ed. 1968); cf. State v. Deets, 195 N.W.2d 118, 123–124 (Iowa 1972). See also 47 Iowa L.Rev. 527 (1962).

Furthermore, as disclosed by the above quote from *Somerville,* absence of defendant's consent to any such order is not here determinative. See also United States v. Tateo, 377 U.S. 463, 467–468, 84 S.Ct. 1587, 1590, 12 L.Ed.2d 448 (1964); People v. Hathcock, 8 Cal.3d 599, 105 Cal.Rptr. 540, 504 P.2d 476, 485–486 (1973); State v. Elkinton, 56 Wis.2d 497, 202 N.W.2d 28, 30 (1972).

In any event the causative phrase in trial court's order, quoted above, must mean the court, in the exercise of judicial discretion, found an existent vitiating procedural defect which would preclude the return of a valid verdict. Thus trial court's decision implemented a legitimate state policy absent any manipulation prejudicial to Gowins.

Here again State of Illinois v. Somerville, *supra,* supportively comes into play. There the court aptly stated, 410 U.S. at 467–469, 93 S.Ct. at 1072–1073:

"[I]n cases in which a mistrial has been declared prior to verdict, the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial. That, indeed, was precisely the rationale of *Perez* and subsequent cases. Only if jeopardy has attached is a court called upon to determine whether the declaration of a mistrial was required by 'manifest necessity' or the 'ends of public justice.'

"We believe that in light of the State's established rules of criminal procedure the trial judge's declaration of a mistrial was not an abuse of discretion. Since this Court's decision in Benton v. Maryland, *supra,* federal courts will be confronted with such claims that arise in large measure from the often diverse procedural rules existing in the 50 States. Federal courts should not be quick to conclude that simply because a state procedure does not conform to the corresponding federal statute or rule, it does not serve a legitimate state policy. Last Term, recognizing this fact, we dismissed a writ of certiorari as improvidently granted in a case involving a claim of double jeopardy stemming from the dismissal of an indictment under the 'rules of criminal pleading peculiar to' an individual State followed by a retrial under a proper indictment. Duncan v. Tennessee, 405 U.S. 127, 92 S.Ct. 785, 31 L.Ed.2d 86 (1972).

"In the instant case, the trial judge terminated the proceeding because a defect was found to exist in the indictment that was, as a matter of Illinois law, not curable by amendment. The Illinois courts have held that even after a judgment of conviction has become final, the defendant may be released on habeas corpus, because the defect in the indictment deprives the trial court of 'jurisdiction.' The rule prohibiting the amendment of all but formal defects in indictments is designed to implement the State's policy of preserving the right of each defendant to insist that a criminal prosecution against him commenced by the action of a grand jury. The trial judge was faced with a situation similar to those in *Simmons,* [v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968] *Lovato,* [v. New Mexico, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244] and *Thompson,* [v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146] in which a procedural defect might or would preclude the public from either obtaining an impartial verdict or keeping a verdict of convic-

tion if its evidence persuaded the jury. If a mistrial were constitutionally unavailable in situations such as this, the State's policy could only be implemented by conducting a second trial after verdict and reversal on appeal, thus wasting time, energy, and money for all concerned. Here the trial judge's action was a rational determination designed to implement a legitimate state policy, with no suggestion that the implementation of that policy in this manner could be manipulated so as to prejudice the defendant."

Taking all instantly involved circumstances into account we now hold, trial court's termination of the original action was proper as a matter of manifest necessity and warranted by the ends of public justice.

Resultantly the trial of defendant Larry D. Gowins on the charged violation of Code § 247A.6 did not contravene his Fifth Amendment rights against double jeopardy.

Affirmed.