**STATE of Iowa, Petitioner,**

v.

**William R. EADS, Judge of the District Court in and for Johnson County, Respondent.**

No. 2–56981.

Supreme Court of Iowa.

Oct. 15, 1975.

Carl J. Goetz, County Atty., and Lawrence L. Lynch, Asst. County Atty., for petitioner.

Daniel L. Bray, Johnson, Penny & Bray, Iowa City, for respondent.

Submitted to MOORE, C. J., and REES, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

REYNOLDSON, Justice.

This certiorari proceeding presents the issue whether a county jail prisoner who fails to return following work release may be prosecuted for escape, a violation of § 745.8, The Code.

May 7, 1973, Thomas Shehorn was convicted of receiving and concealing stolen property. He was sentenced to serve one year in the Johnson county jail. May 11, 1973 he made application for work release pursuant to what is now §§ 356.26 through 356.36, The Code. A district court order entered the same date provided Shehorn "be given opportunity to be released for employment and work release under the provisions of the Iowa law and upon proper application for daytime work subject to the approval of the Sheriff of Johnson County, Iowa."

Shehorn signed a "Work Release Agreement" which provided, *inter alia,* he would return to Johnson county jail at completion of his day's work and would not leave the territorial limits of Johnson county without the sheriff's written consent. By separate attached page he acknowledged he understood he was subject to the provisions of § 356.36 (contempt of court) and § 665.4(2) (punishment for contempt).

September 11, 1973, Shehorn failed to return to the Johnson county jail after work. He was apprehended on October 13, 1973 in Colorado and returned to Iowa.

A county attorney's information charging escape in violation of § 745.8 was filed. Shehorn's demurrer to the information was overruled by a district court judge other than respondent. Subsequently the defense filed a motion to adjudicate law points which was presented to respondent judge. The motion alleged the facts asserted "do not constitute a crime under Section 745.8 of the Code of Iowa." Certain other facts were stipulated on submission. Neither party challenges this manner of raising the issue. See *Reynolds v. Nowotny,* 213 N.W.2d 648, 651 (Iowa 1973); *Mechanicsville T. & S. Bank v. Hawkeye-Security I. Co.,* 158 N.W.2d 89, 90 (Iowa 1968).

Respondent ruled, "Defendant, Thomas Shehorn, is not liable under Section 745.8 for the crime of Breaking Jail—Escape in Case No. 6154." We granted the State's petition for writ of certiorari, and now sustain the writ.

I. In a certiorari proceeding where, as here, there are no factual disputes and no conflicting inferences to be drawn from the facts it is for us to review trial court's conclusions as a matter of law. And in reviewing law issues this court is not bound by trial court's ruling. *State v. Cullison,* 227 N.W.2d 121, 126 (Iowa 1975) and citations.

II. Only a portion of § 745.8, The Code, is relevant here:

"If any person confined in any jail * * * break jail and escape therefrom, or escape from the custody of the officer charged with his keeping, he shall be guilty of a felony * * *."

Particularly pertinent is the following from the same chapter:

"745.2 *Actual breaking not necessary.* In order to constitute an escape under the provisions of * * * section 745.8, it is not necessary that the prisoner be within any walls or enclosure nor that there shall be any actual breaking nor that he be in the presence or actual custody of any officer or other person."

A consideration of relevant statutory provisions must include § 356.26, which states the district court "may grant by appropriate order to any person sentenced to a county jail the privilege of leaving the jail at necessary and reasonable hours" for certain specified purposes, including employment. The same section provides, "All released prisoners shall remain, while absent from the jail, in the legal custody of the sheriff, and shall be subject, at any time, to being taken into custody and returned to the jail." Section 356.28 authorizes the sheriff or other suitable person or agency to secure employment for "unemployed prisoners granted privileges under sections 356.26 to 356.36, inclusive." Section 356.32 authorizes the sheriff to whom the prisoner is initially committed to contract with the sheriff of another county for the prisoner's employment in the latter county "and while so employed to be in the other's custody." Section 356.36 states any person who fails

to return to jail "after the hours of release authorized by the court order" and "who does not thereby fall within the provisions of section 745.8, may be deemed guilty of contempt of court and punished as provided in section 665.4."

Respondent's brief asserts Shehorn was released from jail pursuant to § 356.26, which, as noted above, carefully preserves the concept that such prisoners remain in the sheriff's legal custody. Thus as this controversy is postured, both parties agree Shehorn was in the sheriff's custody before he left Iowa for Colorado.

Custody begins when an arrest is made and continues until the defendant is lawfully discharged. 3 Wharton's Criminal Law and Procedure § 1373, p. 765 (1957). An escape is usually held to have been committed where there is simply a departure from legal custody. 27 Am.Jur.2d, Escape, Prison Breaking, and Rescue § 1, p. 849 (1966); 30A C.J.S. Escape § 2, p. 876 (1965). No force is required. Annot., 96 A.L.R.2d 520, 522 (1964). To be guilty of an escape the prisoner may depart either a constructive or an actual custody. Custody of either type will satisfy the custodial requirement of § 745.8. See § 745.2 ("It is not necessary that the prisoner * * * be in the * * * actual custody of any officer"); cf. *State v. Rath,* 258 Iowa 568, 573, 139 N.W.2d 468, 471–472 (1966) ("A parole officer's physical apprehension of his prisoner * * * is a mere transfer of the subject from constructive custody into actual or physical custody"); *State v. Baker,* 355 Mo. 1048, 1052, 199 S.W.2d 393, 395 (1947) ("[T]here must be an actual or constructive custody").

It is plain that Shehorn when on work release remained in the constructive custody of the Johnson county sheriff. This is the clear import of § 356.26, which states a prisoner on work release remains in the "legal" (constructive) custody of the sheriff and may at any time be "taken into [actual] custody." This custodial concept is rein-

forced by § 356.32 which provides for transfer of custody to the sheriff of another county in which the prisoner may be employed.

■ It is equally plain when Shehorn, even though on work release, left for Colorado without permission there was a departure from legal custody, constituting the crime of escape. 27 Am.Jur.2d, supra; 30A C.J.S., supra; *Lueders v. Brewer,* 218 N.W.2d 638, 640–641 (Iowa 1974). While there is no Iowa case directly on point, the overwhelming weight of authority supports this view. See *United States v. Perez,* 457 F.2d 555 (6 Cir. 1972) (prisoners volunteering as research subjects left clinical research center); *United States v. Rudinsky,* 439 F.2d 1074 (6 Cir. 1971) (prisoner with outside employment attached to treatment center failed to return); *United States v. Hollen,* 393 F.2d 479 (4 Cir. 1968) (prisoner on work release failed to return); *McCullough v. United States,* 369 F.2d 548 (8 Cir. 1966) (prisoner failed to return at designated time to guidance center); *Frazier v. United States,* 119 U.S.App.D.C. 246, 339 F.2d 745 (1964) (prisoner left mental hospital); *Nace v. United States,* 334 F.2d 235 (8 Cir. 1964) (prisoner working for private employer out of a guidance center absconded); *People v. Labrum,* 25 Cal.App.3d 105, 101 Cal.Rptr. 602 (1972) (prisoner overstayed "temporary community release" from narcotic detention facility); *People v. Perez,* 24 Cal.App.3d 340, 100 Cal.Rptr. 834 (1972) (prisoner failed to return from a 72 hour temporary release from detention center); *People v. Owens,* 236 Cal.App.2d 403, 46 Cal.Rptr. 91 (1965) (prisoner at conservation center assigned to forest fire fighting crew under supervision of a foreman of Division of Forestry left fire lines without permission); *People v. Haskins,* 177 Cal.App.2d 84, 2 Cal.Rptr. 34 (1960) (prisoner in work furlough program failed to return to jail farm as instructed); *State v. Holbrook,* 318 A.2d 62 (Me.1974) (prisoners on furlough failed to return); *State v. Warden of the Maryland Penitentiary,* 196 Md. 672, 75 A.2d 843 (1950) (prisoner departed while working without a guard on a private farm); *Shifflett v. State,* 4 Md.App. 227, 242 A.2d 182 (1968) (trustee of county jail departed while working in the court clerk's office); *State v. Baker,* supra (prison farm prisoner absconded when permitted to go to the river out of guard's presence); *State v. Ford,* 281 N.C. 62, 187 S.E.2d 741 (1972) (prisoner departed when permitted to attend an out-of-prison movie with a "volunteer"); *State v. Furlong,* 110 R.I. 174, 291 A.2d 267 (1972) (prisoner departed while in work release program); *State v. Kiggins,* 86 S.D. 612, 200 N.W.2d 243 (1972) (prisoner on work release left the state).

While the above decisions involve varying escape statutes, all support the view an escape charge may be grounded on a departure from constructive custody, as in the litigation *sub judice.* Shehorn's conduct falls squarely within the prohibition of § 745.8 as interpreted under the provisions of § 745.2.

II. Respondent's brief advances several arguments in support of the district court's holding there was no § 745.8 escape. Two are worthy of consideration.

Respondent's brief notes a special statute makes an absconder from the territorial limits of parole guilty of escape (§ 745.3), and with respect to inmates of state institutions on work release, another special code section makes a failure to return an escape (§ 247A.6). As there is no similar special "escape" statute relating to a county jail prisoner who fails to return from work release, it is urged Shehorn committed no offense.

■ We are not so persuaded. Not only does this rationale ignore § 745.2 ("In order to constitute an escape under * * * § 745.8, it is not necessary that the prisoner be within any walls or enclosure * * * nor that he be in the presence or actual custody of any officer or other person") it also ignores the following statutory language:

*"356.36 Contempt of court.* Any person who fails to return to said jail after the hours of release authorized by the court order and who does not thereby fall within the provisions of section 745.8, may be deemed guilty of contempt of court and punished as provided in section 665.4."

This section plainly indicates a charge of contempt or of escape (under § 745.8) might lie, depending on circumstances in a given case. Respondent's ruling seems to adopt this interpretation, but indicates a § 356.36 "court order" could not "provide a basis" for a § 745.8 escape charge where, as here, it did not specifically prescribe territorial limits. Had those limits been so prescribed, respondent ruled, "it could be urged that the jail walls had been constructively expanded to include the prescribed territorial limits whereby a departure therefrom would constitute escape." See *State v. Rath,* supra, 258 Iowa at 573, 139 N.W.2d at 471 (relating to the escape of a person placed on parole).

■ Of course, § 745.8 on its face proscribes conduct and defines it as a crime. Section 745.2 expands its scope. No implementing court order is required. In our view, as it related to an escape from custody, the § 745.8 clause "confined in any jail" simply means committed to jail. Obviously a prisoner committed to jail who breaks away from the custodial officer on his way to confinement would be guilty of escape though he was never incarcerated. Cf. *State v. Bates,* 23 Iowa 96 (1867); *People v. Paul,* 147 Cal.App.2d 609, 305 P.2d 996 (1957). "It is the departure from lawful custody, rather than a place of confinement, such as a jail, which is the essential element of the offense." 3 Wharton's Criminal Law and Procedure § 1373, p. 765 (1957); *State v. Gowins,* 211 N.W.2d 302, 306 (Iowa 1973).

The same rationale advanced to support respondent's ruling has been rejected in other jurisdictions. *People v. Haskins,* supra, 177 Cal.App.2d at 87, 2 Cal.Rptr. at 36 ("Appellant points to the fact that section 4532 [escape] was amended in 1959 to expressly cover the escape of prisoners engaged in the work furlough program * * * and argues that this is a legislative determination that the section before amendment did not cover such cases. We construe it rather as a legislative clarification"); *State v. Furlong,* supra, 110 R.I. at 178–179, 291 A.2d at 270 (" * * * defendant now argues that it is reasonable and logical to assume that our own Legislature would not have amended our escape statute in the manner indicated had it not believed that the pre-amendment version lacked sufficient breadth to cover a prisoner participating in the work release program who fails to return to his place of confinement at the stipulated time. His contention ignores the possibility that the Legislature amended the law in 1970 in an attempt to achieve a clarification of, and not a change in, the existing law"); *State v. Kiggins,* supra, 86 S.D. at 615, 200 N.W.2d at 244 (interpreting a similar escape statute, "Defendant was lawfully confined in the Minnehaha County jail. The privilege of work-release merely extended the limits of his confinement. Until his discharge * * * he remained * * * in constructive custody * * *. His wilful abscondment from restraint and custody constituted an escape.") See also *McCullough v. United States,* supra; *Shifflett v. State,* supra.

■ It is next asserted because the paper attached to Shehorn's work release agreement referred only to a punishment for contempt for violation of the agreement the State is in some manner precluded from prosecuting him for escape. Respondent's brief is inherently inconsistent in first contending part of Shehorn's agreement was inoperative because the court "did not prescribe the territorial limits by direct order or approval of any work release agreement" and then arguing the remainder of the instrument was effective because the court "sought and accepted his written acknowledgment that a violation of his unilateral statement [agreement] could be only possible contempt of court." Respondent's brief

does not explain how the court sought execution of one of the pages while unaware of the other.

 We need not determine whether the sentencing court was required to be more specific regarding work release than was the court which sentenced Shehorn. It may be, as the dictum in respondent's ruling indicates, more specificity or at least an approval of the work release agreement would furnish a firmer footing for a contempt proceeding. Compare § 356A.3, The Code. Assuming but not deciding there was an infirmity in the agreement, the reasoning of the California court in *People v. Perez*, supra, 24 Cal.App.3d at 346, 100 Cal. Rptr. at 838 applies:

"Much less would an invalid permit, to be physically outside of the facility, terminate constructive custody, which may be the basis of an escape (Citations). The shortcoming asserted by defendant did not convert the temporary release into an unconditional release or a parole. The operative period of the temporary release authorization, valid or invalid, came to an end upon the expiration of the 72 hours; the legal invalidity of the purported authority or license by which he left the physical confines of the Colony could in no way have any bearing upon defendant's failure to return after that time."

▪ Nor in this case would the sheriff's asserted lack of authority to establish the conditions of Shehorn's work release have any bearing on the question of escape. By the terms of the agreement, Shehorn was to return to jail following work on September 11, 1973. The court order granting his application for work release specified daytime work. Neither instrument authorized him to depart the sheriff's custody for a month in Colorado.

We are even less impressed with the argument Shehorn was only aware he would be subject to "possible contempt." Ordinarily, ignorance of the law is no excuse. The acknowledgment Shehorn signed does not state contempt is the only punishment.

Neither the sentencing court nor the sheriff had authority to repeal or nullify the State's criminal laws. This "acknowledgment" furnished no justification for Shehorn's escape.

We sustain the writ, nullify trial court's ruling, and remand for further proceedings consistent with this opinion.