291 A.2d 267.

STATE *vs.* JOSEPH FURLONG.

MAY 30, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.  Joseph Furlong was indicted for willfully and feloniously escaping from the custody of the warden and other officers while outside the confines of the minimum custodial unit of the Rhode Island Adult Correctional Institutions (hereinafter referred to as the A.C.I.) in violation of G. L. 1956, §11-25-4.

Prior to trial defendant and the state filed an agreed statement of facts and joined in representing to a Superior Court justice that the question of law arising out of those facts was of such doubt and importance and so affected the merits of the controversy as to require resolution by

this court before any further proceedings should be taken in the Superior Court. Accordingly, the trial justice, pursuant to G. L. 1956 (1969 Reenactment) §9-24-27, certified the following question for our determination:

"When an inmate is allowed to engage in the Work Release Program and as a result thereof is permitted to travel to and from his place of employment without custodial supervision and fails to return to the A.C.I. as agreed pursuant to the terms and provisions of his Work Release Program Agreement, does the failure to return to the Adult Correctional Institutions constitute an 'escape' within the meaning of the terms and provisions of the Rhode Island General Laws of 1956, as amended, Title 11, Chapter 25, Section 4?"[1]

The agreed statement discloses that on or about December 27, 1968, defendant, then serving an eighteen-month sentence at the A.C.I., was participating in a work release program[2] pursuant to which he was privately employed as a machine operator by a concern doing business in the city of Providence. On that morning he left the A.C.I. and traveled by his own means to his place of employment where he remained until the close of the working day. In-

---

[1] Although the question certified asks whether the failure to return to the A.C.I. as required "does" constitute an escape, we answer the question as if it asked whether such a failure to return "can" constitute an escape. Naturally, the state must, if there be a trial, prove all the elements of the offense, including, for example, criminal intent.

[2] Under the work release legislation, a prisoner, subject to certain qualifications and conditions, and "*** as to whom there is reasonable cause to believe he will honor his trust, may be permitted to work at paid employment for his own benefit or participate in a training or educational program in the community on a voluntary basis outside the institution lot at such times and under such conditions and restrictions as the assistant director may impose and subject to recall by the warden of the adult correctional institutions as provided hereafter, while continuing as a prisoner at the adult correctional institution or the state reformatory for women ***." General Laws 1956. §13-2-35. as amended by P. L. 1968, ch. 115, sec. 1.

stead of then returning to the A.C.I. by 6:30 p.m. as required by his work release agreement, he overstayed his leave, became intoxicated and remained in that condition until the afternoon of December 29, when, at about 2:30 p.m., he called the prison officials and requested them to arrange for his return to the institution. After returning to the A.C.I. he was indicted for violating G. L. 1956, §11-25-4. Where pertinent that statute provides that:

> "Every prisoner confined in the medium or minimum custodial unit of the adult correctional institutions or in the custody of the warden or other officer while outside the confines of the custodial unit, who * * * shall escape, or attempt to effect an escape, shall be fined not more than five hundred dollars ($500) or shall be sentenced by the court to a term of imprisonment in the adult correctional institutions for not more than five (5) years."

The pivotal issue is whether defendant was, within the contemplation of §11-25-4, "in the custody of the warden or other officer" on December 27, 1968 when he failed to return to the place of his confinement by 6:30 p.m.

The principal thrust of defendant's argument, as we understand it, is that the meaning of the word "custody" will vary depending upon the context in which it appears, and that as used in our escape statute it contemplates the exercise of actual physical restraint sufficient to prevent a prisoner from going at large. To support that narrow construction, defendant leans heavily on *United States* v. *Person*, 223 F. Supp. 982 (S.D. Cal. 1963). There an inmate of a half-way house who failed to return to his place of confinement at the expiration of a five-hour pass was charged with a violation of the federal escape statute.[3] The

---

[3]That statute (18 U.S.C.A. §751) is substantially similar to our own. Where pertinent, it reads as follows:

"Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney

court rejected any notion that Congress had intended in that statute to punish a physically free prisoner for failing to return voluntarily to his jailer. Instead, it construed Congress' true purpose as being to deter desperate men from making dangerous prison breaks, and it reasoned that under an enactment so purposed there could be no escape unless the prisoner, when he made his getaway, was subject to at least some slight aspect of physical detention. *Id.* at 985.

The question, then, is whether our statute, which substantially resembles that construed in *Person,* is broad enough to comprehend an unrestrained prisoner's escape from the place where he worked. That question was answered in this state almost forty years ago in *State* v. *McInerney,* 53 R. I. 203, 165 A. 433 (1933). There the defendant "walked away" from a group of prisoners who, while under the supervision of a prison guard, were engaged in farming activities outside the prison walls. He defended against the charge that he had escaped by arguing that the prison guard had abandoned his custody at the time he absconded. The court rejected that argument saying that a person sentenced to confinement is in contemplation of law in prison until he serves his term and that "[w]herever a prisoner is assigned to work, he is, until discharged, still in custody, and if he leaves such custody he becomes guilty of escaping." *Id.* at 205, 165 A. at 434.

The *McInerney* approach coincides generally with the views of those authorities which say that an unattended prisoner escapes from custody even though he may have made his getaway while performing labor outside the

General, or from any custody under or by virtue of any process issued under the laws of the United States *** or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5000 or imprisoned not more than five years, or both ***."

prison walls or while at large on errands. *United States v. Rudinsky*, 439 F.2d 1074 (6th Cir. 1971); *McCullough v. United States*, 369 F.2d 548 (8th Cir. 1966); *Cassady v. State*, 247 Ark. 690, 447 S.W.2d 144 (1969); *Boyce v. State*, 250 A.2d 200, 202 (Me. 1969); *State v. Baker*, 355 Mo. 1048, 199 S.W.2d 393 (1947); Perkins, *Criminal Law* 503 (2d ed. 1969); 3 *Wharton's Criminal Law and Procedure* §1373 at 765 (1957). *See State v. Jones*, 266 Minn. 526, 529, 124 N.W.2d 729, 731 (1963).

When we apply the view of these authorities as to what constitutes an escape from "custody" to the facts before us, it becomes clear that the language of §11-25-4 is sufficiently broad to include an unguarded and unrestrained prisoner who is at large while in a work release program. *McCullough v. United States, supra; People v. Haskins*, 2 Cal. Rptr. 34, 177 Cal. App.2d 84 (1960).

The defendant also points to the fact that more than a year following his alleged escape §11-25-4 was amended by P. L. 1970, ch. 70, sec. 1, so that it now expressly applies not only to a prisoner who escapes from the custody of the warden, but also to one who escapes from "that custody which pertains to the work release program." That amendment, defendant observes, brought Rhode Island into line with those states which, as part of their legislation authorizing release programs, provide that a prisoner who fails to return from the place where he is employed under the program has unlawfully escaped.[4]

It is with these statutes in mind that defendant now argues that it is reasonable and logical to assume that our own Legislature would not have amended our escape statute in the manner indicated had it not believed that the pre-amendment version lacked sufficient breadth to cover a

---

[4]See *e.g.*, Ill. Stat. Ann. ch. 38, §123-7 (1970); N. Y. Penal Law §§205.16 and 205.17 (McKinney 1970); Pa. Stat. Ann. Ch. 61, §1053 (1970).

prisoner participating in the work release program who fails to return to his place of confinement at the stipulated time. His contention ignores the possibility that the Legislature amended the law in 1970 in an attempt to achieve a clarification of, and not a change in, the existing law. That view has support among the authorities, and in the light of the strong language of *State* v. *McInerney, supra,* it is the one we now adopt. *McCullough* v. *United States, supra; People* v. *Haskins, supra.* But see *United States* v. *Vaughn,* 446 F.2d 1317 (D. C. Cir. 1971).

Having answered the question certified to the extent necessary, the papers in the case with our decision endorsed thereon are ordered sent back and the case is remanded to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Henry Gemma, Jr.,* Special Asst. Attorney General, for plaintiff.

*Eugene F. Toro,* for defendant.