STATE

v.

William TREGASKIS.

No. 87–221 C.A.

Supreme Court of Rhode Island.

April 21, 1988.

James E. O'Neill, Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., for plaintiff.

Peter Olsen, Reilly, Oliver & Olsen, Wickford, for defendant.

**OPINION**

WEISBERGER, Justice.

This case is before us on the defendant's appeal from a judgment of conviction entered in the Superior Court following a nonjury trial. We affirm. The facts insofar as pertinent to this appeal are as follows.

On October 28, 1985, William Tregaskis (defendant) was transported from the Adult Correctional Institutions (ACI) to the Washington County Superior Court by Captain Leon Brown and Deputy Sheriff Mark Gardner of the Washington County Sheriff's Department. The defendant was one of seven prisoners that Captain Brown and Deputy Sheriff Gardner were responsible for transporting that day. The trip to Washington County proved uneventful. However, while en route from Washington County Superior Court to the ACI, defendant escaped through the rear door of the transporting van. The next morning, defendant, still clothed in prisonwear and handcuffs, voluntarily surrendered to the Pawtucket police.

The defendant was subsequently charged with escape from custody. He waived his right to a jury trial. Thereafter, trial proceeded before a justice of the Superior Court. Following presentation of all the evidence, the trial justice denied defendant's motion for judgment of acquittal. The defendant was found guilty and sentenced to two years, to run consecutively to the sentence he was serving at the time of his escape.

Following imposition of sentence, the trial justice heard the state's recommendation that defendant be sentenced additionally under G.L. 1956 (1981 Reenactment) § 12-19-21, as amended by P.L. 1982, ch. 226, §§ 1, 2, the habitual-offender statute. In passing upon the recommendation, the trial justice noted that defendant had been advised in open court at the time of his arraignment that the state would be moving to present him as a habitual offender. Following hearing on the issue, the trial justice determined that defendant had three prior convictions.[1] The trial justice thereafter imposed an additional two-year sentence pursuant to the habitual-offender statute, to run concurrently with the term that defendant was already serving on the escape conviction.

On appeal defendant raises several issues that will be addressed in the order in which they appear in defendant's brief.

I

WHETHER THE TRIAL JUSTICE ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON THE ESCAPE CHARGE

■ The defendant was convicted of escape as a custodial-unit inmate under G.L. 1956 (1981 Reenactment) § 11-25-2, as amended by P.L. 1984, ch. 65, § 1, which provides in part:

"Every prisoner confined in any custodial unit of the adult correctional institutions or in the custody of the warden or other correctional employee while outside the confines of the institutions * * * who * * * shall escape, or attempt to effect an escape, shall be sentenced by the court to a term of imprisonment in the adult correctional institutions for not less than one year nor more than twenty (20) years."

The defendant argues that the statute's reach is limited to those instances wherein a prisoner escapes from the custody of correctional employees while outside the confines of the ACI. A review of § 11-25-2 indicates that to support a conviction for escape, the state must prove that the defendant was either (1) a person confined in a custodial unit of the ACI, or (2) a person in the custody of the warden while outside the confines of the ACI, or (3) a person in the custody of a correctional employee other than the warden while outside the confines of the ACI. The defendant argues that since Captain Brown and Deputy Sheriff Gardner were not "correctional employees" as that term is used in § 11-25-2, a critical element of the statutory offense was not proven, thereby necessitating the granting by the trial justice of defendant's motion for judgment of acquittal.

The record indicates that the state sought to comply with the requirements of § 11-25-2, not by proving that Captain Brown and Deputy Sheriff Gardner were employees of the correctional department, as defendant suggests, but by establishing that defendant, was at all times in the custody of the warden. Contrary to defendant's argument, the very terms of the statute suggest that if the state proves that defendant was in the warden's custody, it is not necessary also to prove that the officers transporting defendant were correctional employees.

---

1. At trial defendant stipulated that he had three prior convictions. Apparently defendant was convicted of two breaking and entering charges, on which he served two concurrent terms at the ACI. The next conviction was on a charge of escape by a custodial inmate, while being held on a parole violation. It was that escape conviction that defendant was serving at the time of the escape that is the subject of this appeal. For purposes of this appeal, it seems that the references to defendant's three convictions include the breaking and entering, the first escape, and the present offense.

This court has previously had the opportunity to construe the terms of similar escape statutes in *State v. McInerney*, 53 R.I. 203, 165 A. 433 (1933), and more recently in *State v. Furlong*, 110 R.I. 174, 291 A.2d 267 (1972). Both *McInerney* and *Furlong* involved prisoners who escaped while participating in activities outside the correctional institutions walls. The defendant in *McInerney* walked away from an outside work detail. On appeal the defendant argued that the prison guard had, in essence, abandoned custody at the time that the defendant had effectuated his escape. The court rejected that argument, reasoning that a person sentenced to confinement " 'is in contemplation of law in prison until he serves his term.' " 53 R.I. at 205–06, 165 A. at 434. Relying in great part on *McInerney*, the court in *Furlong* determined that an unguarded and unrestrained prisoner involved in a work-release program is in the custody of the warden. *See State v. Furlong*, 110 R.I. at 177, 291 A.2d at 270. Accordingly a prisoner who fails to return to prison from the place where he or she is employed under the work-release program has unlawfully escaped custody.

Applying these principles to the facts of the instant case, we believe that the language of § 11–25–2 is sufficiently broad to support the principle that a prisoner who is serving a period of confinement in a correctional institution remains in the custody of the warden during the time that the prisoner is temporarily outside the confines of the institution. In other words, although the prisoner may be physically outside the ACI, he or she is still in the legal custody of the warden until such time as the applicable period of confinement is served. That someone other than the warden is responsible for transporting or guarding the prisoner while outside the confines of the ACI in no way diminishes the fact that the warden is ultimately responsible for and in control of the prisoner.

Moreover, the trial justice, in passing upon defendant's motion for judgment of acquittal, noted that there are different transportation arrangements for prisoners in different counties. In Washington and Newport Counties the sheriffs' departments handle transportation of prisoners whereas in Providence County prisoners are transported by marshalls, who are correctional department employees. Thus, to accept defendant's interpretation of § 11–25–2, a prisoner escaping while en route to the Providence County Courthouse could be charged under § 11–25–2 but a prisoner escaping while en route to Newport County could not be charged under the statute. This court will not construe the language of a statute in such a manner as would violate the intent of the Legislature or lead to either absurd or meaningless results. *See, e.g., Zincone v. Mancuso*, 523 A.2d 1222 (R.I. 1987); *Pardey v. Boulevard Billiard Club*, 518 A.2d 1349 (R.I. 1986).

The trial justice, in passing upon defendant's motion for judgment of acquittal, appropriately distinguished between the legal custody of the warden and the physical custody of the deputy sheriffs for the limited purpose of transporting defendant to and from prison. An escape by a prisoner during such period of transportation, the trial justice determined, constituted a violation of § 11–25–2. Accordingly, the trial justice correctly denied defendant's motion for judgment of acquittal.

## II

### WHETHER THE TRIAL COURT LACKED JURISDICTION TO ENTERTAIN THE HABITUAL-OFFENDER PETITION

■ Following imposition of sentence on the escape conviction, the trial justice heard the state's recommendation that defendant face additional sentencing under § 12–19–21,[2] the habitual-offender statute.

---

**2.** General Laws 1956 (1981 Reenactment) § 12–19–21, as amended by P.L. 1982, ch. 226, §§ 1, 2, provides as follows:

"(A) If any person who has been previously convicted in this or any other state of two (2) or more felony offenses arising from separate and distinct incidents and sentenced on two

Thereafter, the trial justice, pursuant to § 12–19–21, sentenced defendant to an additional two-year term to be served consecutively with the sentence imposed on the escape conviction.

Before this court, defendant's argument is threefold. First, defendant asserts that the trial court lacked jurisdiction to hear the habitual-offender petition because the state had failed to file the petition with the court within fourteen days of defendant's arraignment. The defendant argues that § 12–19–21 requires the state to file such a petition with the court and that merely notifying a defendant of such intention is not enough to comply with the burden imposed by statute.

The record indicates that the state, at the time of arraignment, presented defendant with oral notice that he would be subject to treatment as a habitual criminal. There is no indication that the state filed such petition with the court, only that defendant was notified of such intentions in open court. However, a reading of § 12–19–21 reveals that the Attorney General "may file with the court, a notice." The language suggests that it is within the prosecutor's discretion to proceed under this section. If the state chooses to proceed, due process undoubtedly requires that a defendant be notified of such intent. In the instant case, there is no question that defendant was so notified. The state took those steps necessary to inform both the court and defendant of its intention to request an enhancement of any sentence imposed on defendant. The defendant was in no way harmed or prejudiced by the lack of a documentary filing on the part of the state. Since defendant received timely notification in open court, it cannot be said that the state failed to comply with the intent of the statute. Accordingly, failure to file such written notice with the court in the facts of the instant case did not deprive the trial court of jurisdiction to hear the habitual-offender petition.

■ The defendant also argues that he is not a habitual offender as that term is defined in § 12–19–21. He asserts that § 12–19–21 provides for an enhanced sentence for a person who is convicted of a crime only after two or more prior sentences have been fully served. The defendant maintains that because he was still serving his second sentence at the time he escaped, he does not fall within the statute's proscriptions.

A review of § 12–19–21 reveals that a person may be subject to treatment as a habitual offender if he or she "has been

or more such occasions to serve a term in prison shall, after said convictions and sentences, be convicted in this state of any offense punished by imprisonment for more than one year, such person shall be deemed an 'habitual criminal.' Upon such conviction, said person deemed an habitual criminal shall be punished by imprisonment in the adult correctional institutions for a term not exceeding twenty-five (25) years, in addition to any sentence imposed for the offense of which he was last convicted. No conviction and sentence for which said person has subsequently received a pardon granted on the ground that he was innocent, shall be considered as such for the purpose of determining whether said person is an habitual criminal.

"(B) Whenever it appears a person shall be deemed an 'habitual criminal,' the attorney general, within fourteen (14) days of the arraignment, may file with the court, a notice specifying that the defendant, upon conviction, is subject to the imposition of an additional sentence in accordance with this section; provided, however, that in no case shall the fact that the defendant is alleged to be an habitual offender be an issue upon the trial of the defendant, nor shall it be disclosed to the jury. Upon any plea of guilty or nolo contendere or verdict or finding of guilty of the defendant, a hearing shall be held by the court sitting without a jury to determine whether the person so convicted is an habitual criminal. Notice thereof shall be given to the defendant and the attorney general at least ten (10) days prior thereto. Duly authenticated copies of former judgments and commitments which comprise the two (2) or more prior convictions and imprisonments required under this section shall be prima facie evidence of such former convictions and imprisonments. If it appears by a preponderance of the evidence presented that the defendant is an habitual criminal under this section, he shall be sentenced by the court to an additional consecutive term of imprisonment of not exceeding twenty-five (25) years; and provided further, that the court shall order the defendant to serve a minimum number of years of said sentence before he becomes eligible for parole."

previously convicted * * * of two (2) or more felony offenses * * * and sentenced on two or more such occasions * * *." There is no requirement that said sentences be completed before defendant becomes eligible for enhanced punishment as a habitual offender. The defendant relies on the language "after said convictions and sentences" to attribute to the statute the requirement that a defendant be twice convicted and fully serve at least two prior sentences before becoming eligible for treatment under the statute.

As alluded to by the trial justice, the construction urged by defendant could lead to results undoubtedly not intended by the Legislature. A person who could not be treated as a habitual offender while serving a second sentence would not be a habitual offender no matter how many crimes he or she committed during that period of incarceration. It is clear that the Legislature intended no such interpretation of the statute. Therefore we find it unnecessary to belabor an interpretation of the language contained in § 12–19–21, for we find that the language contained therein clearly articulates the plain meaning of the statute. Accordingly the trial justice was correct in his interpretation that all § 12–19–21 requires is for defendant to have been convicted and sentenced on two prior occasions. To adopt the strained interpretation advanced by defendant would surely render nugatory the intent of the Legislature. Thus, we are of the opinion that the trial justice was correct in ruling that defendant was a "habitual offender" pursuant to the language of § 12–19–21.

■ Finally, defendant argues that his presentation as a habitual criminal violates the due-process and equal-protection clauses, article I, section 2, and the proportionality clause, article I, section 8, of the Rhode Island Constitution. At the outset, we note that habitual-offender statutes have long been upheld as constitutional as long as the status of being a habitual offender is not considered a separate offense. *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978); *State v. Sitko*, 457 A.2d 260 (R.I. 1983).

In essence, defendant now argues that the state arbitrarily elected to present him as a habitual offender and, in so doing, violated his constitutional rights of due process and equal protection. The Supreme Court in *Bordenkircher* rejected the argument that a prosecutor's decision to proceed under a habitual-offender statute violated the defendant's due-process rights. 434 U.S. at 364, 98 S. Ct. at 668–69, 54 L. Ed. 2d at 611. The Court recognized that the " 'conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " *Id.* In the absence of such an "unjustifiable standard" in the instant case, *Bordenkircher* dictates that defendant's equal-protection and due-process claims are without basis. *See also State v. DeMasi*, 420 A.2d 1369 (R.I. 1980) (in which we rejected the defendant's argument that decision to charge him as a habitual offender violated equal protection).

Moreover, § 12–19–21 is consistent with the article I, section 8, requirement that the punishment should be in proportion to the offense. The statute reflects the Legislature's determination that a third or subsequent offense is more serious than a first or second offense and accordingly should be punishable as such.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers in the case may be remanded to the Superior Court.